# EXHIBIT C

E-FILED; Frederick Circuit Court
Docket: 12/23/2019 4:12 PM; Submission: 12/23/2019 4:12 PM

IN THE CIRCUIT COURT OF MARYLAND
FOR FREDERICK COUNTY

| | | |
|---|---|---|
| Rebecca Bozarth | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   C-10-CV-19-000975 |
| | ) | |
| v. | ) | |
| | ) | |
| Maryland State Department of Education | ) | **Jury Trial Demanded** |
| | ) | |
| And | ) | |
| | ) | |
| The State of Maryland | ) | CIVIL LITIGATION DIVISION |
| | ) | |
| Defendants, | ) | JAN 2 8 2020 |
| | ) | |
| | ) | Office of the Attorney General |

## COMPLAINT

NOW COMES Plaintiff, Ms. Rebecca Bozarth (herein referred to as "Bozarth," "Plaintiff") by way of her attorney, Morris E. Fischer, Esq., and files this civil action against the Maryland State Department of Education and the State of Maryland (herein referred to as "Maryland State" or "MSDE" "Defendant(s)").

In this reverse discrimination case, Plaintiff (a heterosexual woman) works for the Maryland State Department of Education in an office environment dominated by a clique of managers.[1]  Plaintiff holds absolutely no discriminatory animus towards anyone based on his or her race, gender, national origin or sexual orientation (or other characteristics).  Notwithstanding, when Ms. Bozarth complained that she was receiving unfair treatment as compared to a Lesbian female and was being denied reasonable accommodations by her manager; Ms. Bozarth suffered

---

[1] Plaintiff herein uses the term "Lesbian" and "sexual orientation" as such terms are defined by the Human Rights Campaign's "glossary of terms." Plaintiff recognizes that there are many types of relationships and Plaintiff hopes that her language reflects the respect Plaintiff has towards a person's identify and orientation.
https://www.hrc.org/resources/glossary-of-terms?utm_source=GS&utm_medium=AD&utm_campaign=BPI-HRC-Grant&utm_content=276004739496&utm_term=lgbt%20meaning&gclid=Cj0KCQiAtf_tBRDtARIsAIbAKe3nNbY itU2tBpmvcF8_qH7EDQJv7TK6HcWcSVQzuqwCC_fupdi9FKsaArYPEALw_wcB. Plaintiff also uses these terms in connection with female sex stereotyping.

1

the wrath of her supervisors and other employees that were determined to demonstrate the office's favoritism, preference for a Lesbian employee and unequal treatment (regardless of the equity and fairness to *all persons* - no matter his or her orientation). This retaliation resulted in Ms. Bozarth being kicked out of her office, having her job upended, being required to drive long distances despite her clear medical limitations, suffering a hostile work environment, being told not to speak with coworkers, being excluded from day to day operations and other adverse actions. No person, regardless of his or her orientation or sex, deserves to be treated as Ms. Bozarth was treated. Moreover, it is a critical function of federal and Maryland civil rights laws that employees should be free to make complaints of unlawful discrimination when he or she believes that there has been unlawful discrimination at the workplace. These fundamental statutory rights were denied to Plaintiff as Plaintiff was retaliated against for having a voice against unlawful discrimination. Plaintiff herein requests a trial by jury to remedy the wrongs that Plaintiff has suffered and prays for the Court to order relief. In support of Plaintiff's claim for relief, Plaintiff alleges:

## Parties and Jurisdiction

1. Plaintiff is a resident of the State of Maryland.

2. At all times relevant to this complaint, Plaintiff resided in Brunswick, Maryland.

3. Brunswick Maryland is a city in Frederick County, Maryland.

4. Defendants, are the State of Maryland and the Maryland State Department of Education

5. Maryland State Department of Education is headquartered at 200 West Baltimore Street, Baltimore, MD 21201.

6. The majority of the employment decisions and actions in this case took place at Plaintiff's office, Maryland State Department of Education (MSDE) Office of Child Care Region 12, 5303 Spectrum Drive, suite G, Frederick MD 21703.

7. The majority of the employment actions and decisions in this case occurred in Frederick County Maryland.

8. Jurisdiction is proper in this Court as Plaitniff alleges claims arising from State and Federal Law.

9. Venue is proper as all the facts and claims in this case occurred in the state of Maryland.

### Statement of Facts

10. Plaintiff began her employment May 30, 2012.

11. Plaintiff was hired as a Child Care Licensing Specialist in the Skilled Service with the Division of Early Childhood Development Office of Child Care.

12. Plaintiff was initially hired at a State Salary Grade 13 Step 15.

13. MSDE is a state run-entity that develops standards and policy for Maryland students.

14. The organizational unit within MSDE where Plaintiff worked is the Office of Child Care (OCC).

15. One of OCC's primary functions is to evaluate and manage licensing requirement of child care facilities in the state of Maryland.

16. As a "Child Care Licensing Specialist" Plaintiff is responsible for overseeing a list of child care facilities, including but not limited to: child care centers and family child care homes.

17. Plaintiff's day to day tasks include, ensuring proper background checks on child care personnel, ensuring facilities meet background and training requirements, responding to family complaints and conducting inspections of facilities.

18. Since Plaintiff's hire, she has reported to Dolores Harmon, Regional Manager. Ms. Harmon managed Regions 7 and 12 at times relevant to this complaint.

19. Plaintiff has always performed the functions of her position with the utmost care and concern for OCC's constituents and the children and families that OCC services.

20. Plaintiff is a heterosexual female.

21. Plaintiff's coworkers and supervisors were aware that Plaintiff is a heterosexual female.

22. For the purposes of this complaint, Plaintiff was employed at the MSDE Office of Child Care "Region 12" in Frederick County.

23. Upon information and belief, Plaintiff's managers in Regions 12 have formed a "clique."

24. This clique included a Lesbian female secretary in Region 12, "employee S."

25. Upon information and belief, the managers and secretary have a close professional relation.

26. Upon information and belief, there is a culture at the Regional 12 area of favoritism and special preferences for employees that are within a clique.

27. As a White heterosexual female with a disability, Plaintiff was not a recipient of favoritism and special preferences.

28. Notwithstanding, from 2012 to 2018, Plaintiff performed the functions of the "Child Care Licensing Specialist" outstandingly.

29. Plaintiff routinely received praise over her work product from her coworkers, OCC's constituents and other MSDE stakeholders.

30. Of note, Plaintiff had never had a negative performance evaluation or been counseled about her work ore behavior being below standards.

31. Plaintiff takes immense pride in the quality of her work and her attention to the children and child care facilities over which Plaintiff has responsibility.

32. From Plaintiff's point of view, the well-being and the interests of the children always come first.

33. When Plaintiff first began her employment, Ms. Harmon did not take steps to ensure Plaintiff received a work computer. Instead Ms. Harmon told Plaintiff to go to just "go and read the regulations." Other employees that were hired around the same time (in other regions) as Plaintiff received computers immediately.

34. Generally speaking, in 2018 and prior, Ms. Harmon split her time between the Region 12 office in Frederick and another office. When Ms. Harmon worked in Frederick, she routinely stayed in her office and did not interact with Plaintiff.

35. As a supervisor, Ms. Harmon would lead Region 12 and Region 7 employees in inappropriate workplace prayers. At Region 12 and Region 7 outings, Ms. Harmon led employees in saying "grace" before meals.

36. "Grace" is a Christian religious custom.

37. On one occasion, an employee told Ms. Harmon that she would not be participating in the group parties because she is a Jehova's witness and the Jehova's witness faith does not recognize holidays. Ms. Harmon told the employee that the parties were mandatory.

38. Plaintiff is Jewish and Ms. Harmon was aware of this fact.

39. In other situations, when female employees were considered for open positions, it was known at the office that the more that Plaintiff liked a potential female hire, the more that Ms. Harmon would shy from hiring said individual.

40. For example, when two new employees were hired in/or around 2016 and 2017, Ms. Harmon advised the new employees that they should not associate with Plaintiff.

41. Plaintiff was directly supervised by Kathy Long. Ms. Long was supervised by Ms. Harmon.

42. Ms. Long was Plaintiff's first-line supervisor and Ms. Harmon was Plaintiff's second-line supervisor.

43. In the spring of 2018, Plaintiff spoke to Ms. Harmon about Ms. Long's behavior and selective treatment of certain employees.

44. One of Plaintiff's coworkers, "Ms.S"[2] is a Lesbian.

45. Prior to June, 2018, Plaintiff and Ms. S and other coworkers working at Region 12 were on friendly terms.

46. Prior to June, 2018, employee S and Plaintiff and her coworkers had no issues working together.

47. Prior to June, 2018, employee S and Plaintiff and her coworkers had a positive relationship.

48. Around June 2018, employee S determined that she no longer wanted to remain friendly with Plaintiff and her coworkers.

49. Notably, the coworkers with which employee S no longer wished to remain friendly are all heterosexual.

---

[2] Name has been abbreviated for confidentiality reasons.

50. Employee S cleaned out her office, refused to talk to Plaintiff and her coworkers and made day-to-day work inside Region 12 office extremely difficult.

51. Employee S refused to work in a professional manner with Plaintiff and her coworkers.

52. Plaintiff and Plaintiff's coworkers brought this odd and disruptive behavior to the attention of Ms. Kathy Long.

53. As mentioned above, Ms. Harmon supervised Ms. Long and had supervisory authority over Plaintiff and Plaintiff's coworkers.

54. Upon information and belief, Ms. Long, Ms. Harmon and employee S. were part of a clique.

55. In addition, Plaintiff and Plaintiff's coworkers complained about employee S's rude and disruptive behavior to Ms. Harmon and Ms. Long.

56. Ms. Long and Ms. Harmon were both aware that Ms. S is a Lesbian.

57. Ms. Long and Ms. Harmon were both aware that Plaintiff is a heterosexual.

58. Ms. Harmon showed favoritism towards Ms. S because of her sexual orientation.

59. Upon information and belief, the reason that Ms. Harmon showed Ms. S. favoritism was because of Ms. Harmon's knowledge that Ms. S is LGBTQ and that LGBTQ is a protected status under Maryland law.  In other words, Ms. Harmon did not want to the appearance to be discriminating against an LGBTQ person - regardless of facts or circumstances.

60. Ms. Harmon showed favoritism towards Ms. S because of her membership in the clique.

61. Ms. Harmon showed animus towards Plaintiff because of her orientation (heterosexual).

62. Ms. Long and Ms. Harmon took the side of Ms. S. over Plaintiff and Plaintiff's coworkers because of Ms. S's orientation.

63. Plaintiff's complaining to Ms. Long and Ms. Harmon about employee S, to whom Ms. Long and Ms. Harmon showed favoritism; put Plaintiff on the clique's radar.

64. Plaintiff was also on managers' radar because of Plaintiff's disabilities.

65. Plaintiff suffers from neurological Lyme disease and associated medical issues, including an anxiety disorder.

66. Plaintiff's Lyme disease and anxiety disorder are ADA and MFEPA qualifying disabilities.

67. Plaintiff's Lyme disease substantially interferes with one or more of the major life functions of: working, walking, sitting, driving, standing, muscle and joint function, heartbeat, nervous system impairment, brain impairment and other major life activities.

68. In August 2018, Ms. Harmon had planned another Region 12 office outing.

69. The outing was scheduled for August 30, 2018.

70. Approximately two weeks prior to the outing, Plaintiff told Ms. Harmon that she could not attend the group outing for medical reasons related to Plaintiff's qualifying disability.

71. Prior to this, Plaintiff was aware of statements by Ms. Long about another employee with a disability, Employee "H." Ms. Long made disparaging remarks about employee H's disability to Plaintiff and Plaintiff's coworkers.

72. Plaintiff made a verbal request for a reasonable accommodation not to attend the scheduled event. This request was made by Plaintiff to Ms. Harmon. Plaintiff told Ms. Harmon the request was based on her medical condition.

73. Ms. Harmon denied Plaintiff's request and told her she must attend the gathering. Ms. Harmon also told Plaintiff she must submit medical documentation before making any decision.

74. There was no office work to be done at the gathering and attendance at the gathering was not an essential function of Plaintiff's position.

75. Plaintiff then went to Defendant MSDE's Human Resources (HR) office.

76. Plaintiff complained to HR that Ms. Harmon had improperly denied her request for a reasonable accommodation.

77. Plaintiff was told by HR to send HR a doctor's note justifying her medical absence.

78. Plaintiff provided HR with said Doctor's note - which medically excused Plaintiff from the event.

79. At this point, Ms. Harmon was aware that Plaintiff had a) complained about her unlawfully denying Plaintiff's request for reasonable accommodation to Human Resources b) had gone around Ms. Harmon and defied her decision so that Plaintiff could  medically excused from the event and c) was having issues with a member of the clique, Employee S.

80. Following this event, Plaintiff contacted the Director of the Office of Child Care, Ms. Jennifer Nizer.

81. Ms. Nizer is in the supervisory chain of Ms. Harmon and Ms. Long.

82. Ms. Nizer is a member of the management clique.

83. On September 8, 2018, Plaintiff complained to Ms. Nizer about her being denied a reasonable accommodation, the issues with Ms. Harmon and issues related to employee S. Plaintiff also complained that the supervisor led employees to say "Grace" at Defendants' parties and that another employee, who claimed a religious exemption, was initially required to attend in violation of federal and state employment laws.

84. Following that complaint, Plaintiff was informed that there would be a meeting with Ms. Nizer and Lou Valenti (Branch Chief) involving Region 12. At the time, Plaintiff was told that the purpose of the meeting was to address the issues raised by Plaintiff.

85. The meeting was held on September 24, 2018. Present at the meeting was Ms. Nizer, Ms. Harmon, Mr. Valenti and the Frederick office. It soon became apparent that the purpose of the meeting was not to address Plaintiff's complaints regarding her reasonable accommodation or the issues with her supervisor, Ms. Harmon.

86. Rather, Ms. Nizer and Mr. Valenti made accusatory remarks about Plaintiff's treatment of the Lesbian employee, Ms. S.

87. Two days later, Ms. Long disciplined Plaintiff for allegedly starting an issue with employee S. regarding "file folders."

88. Plaintiff had complained about Ms. S, and Ms. S's protectors were striking back.

89. Plaintiff did not start any issues with employee S. Instead, employee S. was the one instigating issues with Plaintiff.

90. Plaintiff was falsely accused of treating employee S. poorly and of having a "behavior/attitude" issue" toward employee S.

91. Following receipt of this write-up, Plaintiff sent an email to her supervisors, Ms. Harmon and Kathy Long. In this email, Plaintiff complained that she was being unfairly treated in comparison to Ms. S.

92. The reasonable inference from Plaintiff's complaint is that Ms. Harmon, Ms. Long and Ms. Nizer were demonstrating favoritism towards Ms. S based on Ms. S's sexual orientation. Plaintiff also complained that the situation with Ms. S. was causing Plaintiff flare-ups of Plaintiff's disability (i.e., chronic Lyme disease) and that Plaintiff needed the situation with

Ms. S. to end as a result of her disability. Plaintiff's complaint qualifies as protected activity under MFEPA, Title VII and the ADA.

93. Plaintiff sent this complaint on September 27, 2018 at 8:00am.

94. On September 27, 2018 at 10:30am Plaintiff was called to Ms. Harmon's office.

95. In Ms. Harmon's office was Kathy Long, Ms. Nizer(by phone) and Mr. Valenti (by phone).

96. At this meeting, Plaintiff was told that she was "being investigated."

97. Plaintiff was told she had to "pack her things and leave ASAP."

98. Plaintiff was told that her position was reassigned to the Montgomery County Office in Rockville, Maryland (Region 5).

99. Ms. Nizer told Plaintiff's supervisor that **"anything [Plaintiff] left at the office should be put out on the sidewalk."**

100. Plaintiff was discarded from the Region 12 office like a piece of trash.

101. Plaintiff's supervisors and the clique kicked Plaintiff out for discriminatory and retaliatory reasons.

102. Plaintiff's supervisor was told to watch Plaintiff so "[Plaintiff] doesn't steal files."

103. Upon Plaintiff's exit, Plaintiff's supervisor, Ms. Harmon, told her **"I guess you thought you would call Baltimore and get me in trouble, looks like it backfired on you."**

104. This statement is evidence of Ms. Harmon and the clique's retaliatory motive towards Plaintiff for her complaints about reasonable accommodations and religious issues.

105. The Region 5 office is more than a thirty minute commute from Plaintiff's home. With traffic, the Region 5 office is approximately a 1.5 hour commute each way.

106. Plaintiff is medically precluded from driving more than thirty minutes at a time.

107. In October, 2018 Plaintiff received a doctor's note related to Plaintiff's disability wherein her doctor indicated that she could not occupy a position that required her to commute more than thirty minutes.

108. Plaintiff submitted a request for reasonable accommodation to Defendant MSDE's Human Resources department. Plaintiff attached a copy of her doctor's recommendations and diagnosis.

109. Plaintiff and Plaintiff's physician requested medical leave and for Plaintiff to be assigned to an office within thirty minutes commuting time as a reasonable accommodation request under the ADA and MFEPA.

110. Plaintiff made the requests for accommodation on or around October 9, 2018.

111. On October 23, 2018 Plaintiff was disciplined for allegedly bullying employee S.

112. Again, Plaintiff's supervisors and the clique disciplined Plaintiff for discriminatory and retaliatory reasons.

113. The investigation into Plaintiff's alleged bullying of employee S. was a sham.

114. Employee S. was not investigated, despite evidence that employee S. was the individual causing issues in the office.

115. Ms. Nizer informed Plaintiff of the decision that she was being permanently relocated to the Rockville office, outside of Plaintiff's prescribed commuting distance.

116. This decision had detrimental adverse consequences on the terms and conditions of Plaintiff's employment.

117. On October 26, 2018, Plaintiff made another request for reasonable accommodation to be assigned to the Region 12 Frederick office.

118. On October 29, 2018 Plaintiff made a formal complaint to Kim Johnson, Defendant's "Compliance Officer" that Plaintiff believed she was being retaliated against for previously engaging in protected activity. Plaintiff filed a formal complaint of discrimination and retaliation with the Maryland Commission on Civil Rights. This complaint was then cross-filed with the EEOC pursuant to a work-share agreement. Defendants were aware of Plaintiff's filing in November, 2018.

119. On November 2, 2018, Plaintiff spoke with Defendant's compliance officer, Ms. Johnson regarding Plaintiff's discrimination and retaliation complaint and Plaintiff's requests for reasonable accommodations.

120. Upon information and belief, Ms. Johnson is a decision-making authority with Defendant.

121. Upon information and belief, Ms. Johnson was involved in the decisions to deny Plaintiff reasonable accommodation requests.

122. Upon information and belief, Ms. Johnson was not acting in a purely advisory role as an attorney during her interactions with Plaintiff in connection with these matters.

123. Upon information and belief, Ms. Johnson was acting in the role as a manager and not an advising attorney.

124. As a result of Defendant disciplining Plaintiff and moving Plaintiff's office to Rockville, Plaintiff was forced to completely draw down Plaintiff's leave.

125. Plaintiff suffered a loss of over 300 sick leave hours at a value of thousands of dollars.

126. Plaintiff suffered a loss of over 200 hours of annual leave at the value of thousands of dollars.

127. Between October 2018 and March 2019, Plaintiff, through counsel, made multiple requests for reasonable accommodation and continuing complaints of discrimination and retaliation. Plaintiff filed these complaints with Defendants and with the Maryland Commission on Civil Rights and the Equal Employment Opportunity Commission.

128. Plaintiff requested to return to work within a thirty minute commuting distance and other reasonable accommodations.

129. Defendants were aware of Plaintiff's complaints of discrimination and retaliation and Plaintiff's requests for reasonable accommodation.

130. Between October 2018 and March 2019, Defendant's continued to deny Plaintiff's request for a reasonable accommodation to return to the Frederick office.

131. Between October 2018 and March 2019, Defendant's retaliated against Plaintiff by refusing to restore her to her old position.

132. Between October 2018 and March 2019, Defendants discriminated against Plaintiff by refusing to place her in her old position. Defendants' justified this discrimination by falsely claiming that Plaintiff had bullied employee S.

133. Between October 2018 and March 2019, Defendants denied Plaintiff's request for reasonable accommodation.

134. On March 6, 2019 Plaintiff returned to work in Region 12. However, Plaintiff was not returned to her original duty station. Plaintiff was required to work out of a different office with a number of restrictions.

135. Defendants intended to force Plaintiff to quit by refusing to return Plaintiff into a position that she could work.

136. Indeed, Defendants' did not begin to engage in the interactive process with Plaintiff until Plaintiff retained counsel and counsel demanded a response to the reasonable accommodation request in December 2018.

137. Defendants demonstrated favoritism towards Employee S. based on Employee S.'s sexual orientation. The clique wanted Plaintiff removed from her position.

138. In retaliation for Plaintiff filing her September, 2018 complaint, her October 2018 complaint and in retaliation for filing complaints of discrimination and retaliation between October 2018 and March 2019 with Defendants, the MCCR and EEOC - Defendant engaged in a hostile work environment against Plaintiff.

139. Plaintiff received a negative performance evaluation in June 2019.

140. This was the first negative performance evaluation that Plaintiff had ever received in her career with MSDE.

141. The performance evaluation was in direct retaliation for engaging in protected activity under Title VII, the ADA, Rehabilitation Act and MFEPA.

142. The performance evaluation claimed that Plaintiff's performance was sub-par.

143. This was false.

144. Furthermore, the claim of lack of performance was premised on Plaintiff not being in the office for a period of time.

145. There was no work for which Plaintiff was responsible that Plaintiff did not successfully perform during Plaintiff's work-hours.

146. To the extent that Plaintiff did not perform any work, Plaintiff was not required to perform such work while on medical leave in response to Plaintiff's accommodation request.

147. The decision to issue Plaintiff a negative performance evaluation based on Plaintiff's utilization of ADA and MFEPA qualifying leave was discriminatory based on Plaintiff's disability and/or record of having such a disability.

148. In addition to the negative performance evaluation, Defendants' management retaliated against Plaintiff in other ways.

149. Plaintiff was prevented from attending training.

150. This training was a vital component of Plaintiff's position.

151. Although Defendants held training for other employees, Plaintiff was told she was not welcome.

152. Plaintiff was told that she was not allowed to go anywhere where Plaintiff's coworkers would be present.

153. Plaintiff was told not to converse with employees.

154. Plaintiff's coworkers were told that they should ignore Plaintiff if they came across Plaintiff outside of work.

155. Other employees that did not engage in similar protected activity or had not made similar reasonable accommodation requests were permitted to receive training.

156. Training is important for the functions of the position as well as potential career advancement within the Agency.

157. Mandatory training is a material aspect of the position.

158. Plaintiff was told that she could not talk to her coworkers.

159. Discussing issues and work assignments with certain coworkers - as well as general interaction with certain coworkers - is a vital term and condition of Plaintiff's employment.

160. Plaintiff was instructed not to speak with coworkers out of a discriminatory and retaliatory animus towards Plaintiff.

161. There was no valid business reason for Plaintiff to be instructed not to speak to coworkers.

162. Plaintiff was, essentially, put in a corner by the clique like a high school bullying tactic.

163. Defendants did not believe that there would be any backlash from disciplining and silencing a heterosexual female employee that had wrongfully been accused of bullying a Lesbian employee.

164. Upon Plaintiff's return to the Frederick office, Plaintiff's supervisor scrutinized her work schedule more than similarly situated employees that had no reasonable accommodation requests and had not engaged in similar protected activity.

165. Upon returning to the Frederick office, Plaintiff's supervisors have retaliated against Plaintiff by assigning Plaintiff increased workloads in the magnitude of two-three times as much work as similarly situated employees that did not engage in similar protected activity and/or make similar requests for reasonable accommodation.

166. Defendants completely altered the terms and conditions of Plaintiff's employment.

167. By virtue of her complaints and suffering discrimination, Plaintiff has experienced irreparable harm to her career and her career prospects.

168. Plaintiff has been ostracized, denigrated and demeaned by her supervisors as a result of blowing the whistle on these issues.

169. Defendants took the aforementioned actions against Plaintiff because Defendants did not want to be perceived by the general public as being anti-LGBTQ.

170. However, Defendants did not care or concern themselves with throwing Plaintiff under the bus to ensure that Defendants appeared to be pro-LGBTQ.

171. In reality, it was Plaintiff, not Ms. S, that needed protection.

172. The Lesbian management team preferred Ms. S and desired to maintain an image of being pro-LGBTQ - at the expense of Plaintiff and her employment rights.

173. The discriminatory/retaliatory hostile work environment and adverse actions against Plaintiff are continuing and ongoing.

174. Plaintiff has administratively exhausted all claims herein.

175. All claims herein are like or related to Plaintiff's administrative charges.

176. Plaintiff filed administrative complaints with the MCCR and EEOC.

177. Plaintiff's administrative complaints were cross-filed with the MCCR and EEOC pursuant to the Administrative Agencies' work-sharing agreement.

178. More than 180 days have passed since Plaintiff's last administrative charge.

179. The MCCR and EEOC investigated Plaintiff's claims and Plaintiff's claims have been administratively exhausted.

180. Defendants have waived sovereign immunity for Plaintiff's claims under Title VII, MFEPA, the ADA and the FMLA.

181. Plaintiff timely filed a notice of claim with the Maryland State Treasurer pursuant to the Maryland Tort Claims Act, MD State Government Cod Ann. §12-101, et seq.

182. Plaintiff's notice of claim was served via certified mail, return receipt requested and facsimile in accordance with §12-101, *et seq.*

183. All administrative requirements and prerequisites to suit have been satisfied.

184. Plaintiff received a right to sue letter from the EEOC after September 24, 2019.

185. The instant federal complaint is being filed within 90 days of Plaintiff's receipt of the EEOC's right to sue letter.

## COUNT I

### DISCRIMINATION (SEXUAL ORIENTATION) PURSUANT TO & MARYLAND CODE, STATE GOV'T § 20-601, et, sec.

186. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if fully reproduced herein.

187. At all times Plaintiff was meeting the legitimate performance expectations of her employer.

188. Plaintiff was discriminated against based on Plaintiff's sexual orientation (heterosexual).

189. A motivating factor in the adverse actions suffered by Plaintiff was Plaintiff's sexual orientation.

190. A causal connection exists between Defendant's aforementioned actions and Plaintiff's sexual orientation.

191. Defendants took the aforementioned adverse actions against Plaintiff in whole, or in part, due to Plaintiff's sexual orientation.

192. As a direct result of Defendants' actions, Plaintiff suffered monetary and non-monetary damages.

193. Defendants violated & MARYLAND CODE, STATE GOV'T § 20-601, et, sec. when it took adverse actions against Plaintiff due to Plaintiff's sexual orientation.

194. Defendant acted willfully and with actual malice in its actions against Plaintiff.

195. Plaintiff suffered has suffered and continues to suffer: anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

## COUNT II

## DISCRIMINATION (RELIGIOUS) IN VIOLATION OF & MARYLAND CODE, STATE GOV'T § 20-601

196. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if fully reproduced herein.

197. Plaintiff is a member of a protected group.

198. Plaintiff is Jewish.

199. At all times Plaintiff was meeting the legitimate performance expectations of her employer.

200. Plaintiff was discriminated against based on Plaintiff's religion (Jewish).

201. A motivating factor in the adverse actions suffered by Plaintiff was Plaintiff's religion.

202. A causal connection exists between Defendant's aforementioned actions and Plaintiff's religion

203. Defendants took the aforementioned adverse actions against Plaintiff in whole, or in part, due to Plaintiff's religion.

204. As a direct result of Defendants' actions, Plaintiff suffered monetary and non-monetary damages.

205. Defendants violated & MARYLAND CODE, STATE GOV'T § 20-601 and Title VII of the Civil Rights Act of 1964, et, sec. when it took adverse actions against Plaintiff due to Plaintiff's sexual orientation.

206. Defendant acted willfully and with actual malice in its actions against Plaintiff.

20

207. Plaintiff suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

## COUNT III

## DISCRIMINATION (RELIGIOUS) IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT

208. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if fully reproduced herein.

209. Plaintiff is a member of a protected group.

210. Plaintiff is Jewish.

211. At all times Plaintiff was meeting the legitimate performance expectations of her employer.

212. Plaintiff was discriminated against based on Plaintiff's religion (Jewish).

213. A motivating factor in the adverse actions suffered by Plaintiff was Plaintiff's religion.

214. A causal connection exists between Defendant's aforementioned actions and Plaintiff's religion

215. Defendants took the aforementioned adverse actions against Plaintiff in whole, or in part, due to Plaintiff's religion.

216. As a direct result of Defendants' actions, Plaintiff suffered monetary and non-monetary damages.

217. Defendants violated Title VII of the Civil Rights Act of 1964, et, sec. when Defendants took adverse actions against Plaintiff due to Plaintiff's religion.

218. Defendant acted willfully and with actual malice in its actions against Plaintiff.

219. Plaintiff suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

## COUNT IV

## DISCRIMINATION (SEX STEREOTYPING) IN VIOLATION OF & MARYLAND CODE, STATE GOV'T § 20-601, *et, sec.* and TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

220. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if fully reproduced herein.

221. Plaintiff is a member of a protected class.

222. Plaintiff is female.

223. Plaintiff's supervisors engaged in stereotyping regarding Plaintiff's sex.

224. Because Plaintiff was not sexually interested in members of Plaintiff's sex, Plaintiff was discriminated against.

225. Because Plaintiff's supervisors had a different opinion as to female employees that were sexual interested in other females versus female employees that were not sexually interested in members of the same sex; Plaintiff's supervises discriminated against the latter as failing to meet a desired sex stereotype.

226. At all times Plaintiff was meeting the legitimate performance expectations of her employer.

227. A motivating factor in the adverse actions suffered by Plaintiff was Plaintiff's sex and sex stereotyping.

228. A causal connection exists between Defendant's aforementioned actions and Plaintiff's sex and sex stereotyping.

229. Defendants took the aforementioned adverse actions against Plaintiff in whole, or in part, due to Plaintiff's sex and sex stereotyping.

230. As a direct result of Defendants' actions, Plaintiff suffered monetary and non-monetary damages.

231. Defendants violated & MARYLAND CODE, STATE GOV'T § 20-601 and Title VII of the Civil Rights Act of 1964, et, sec. when it took adverse actions against Plaintiff due to Plaintiff's sexual orientation.

232. Defendant acted willfully and with actual malice in its actions against Plaintiff.

233. Plaintiff suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

## COUNT V

## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE (THE AMERICANS WITH DISABILITIES ACT AND MARYLAND CODE, STATE GOVERNMENT TITLE 20-601, *et seq.*)

234. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if fully reproduced herein.

235. Defendants discriminated against Plaintiff in violation of The Americans with Disabilities Act and Maryland Code, State Government Title 20-601, *et seq.*

236. Plaintiff has a disability.

237. Plaintiff was regarded as having a disability.

238. Defendants had notice of Plaintiff's disability.

239. Plaintiff has a record of having a disability.

240. Plaintiff could perform the essential functions of her job with a reasonable accommodation.

241. Plaintiff's disability was unrelated in nature and extent so as to reasonably preclude the performance of her employment.

242. Defendants failed to accommodate Plaintiff's disability in violation of The Americans with Disabilities Act and Maryland Code, State Government Title 20-601, *et seq.*

243. Plaintiff requested reasonable accommodations to accommodate Plaintiff's disability.

244. Plaintiff could have performed the essential functions of her position with a reasonable accommodation.

245. Defendants failed to engage Plaintiff in the interactive process.

246. Defendants purposefully delayed engaging Plaintiff in the Interactive process.

247. Defendants' actions were willful and malicious.

248. Plaintiff administratively exhausted her remedies prior to filing this suit.

249. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

250. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants actions.

251. Defendants altered the terms and conditions of Plaintiff's employment because of Plaintiff's disability.

252. Defendants took adverse actions against Plaintiff because of Plaintiff's disability.

253. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

254. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants' actions.

## COUNT VI

## RETALIATION (THE AMERICANS WITH DISABILITIES ACT

255. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if fully reproduced herein.

256. Defendant retaliated against Plaintiff because of Plaintiff's protected complaints about unlawful disability discrimination, Plaintiff's participation activity, Plaintiff's complaints of failure to accommodate and Plaintiff's requests for reasonable accommodation in violation of the Americans with Disabilities Act.

257. Plaintiff engaged in protected activity by opposing discriminatory employment practices to Plaintiff's supervisor, the EEOC, MCCR, Defendants' HR department and others.

258. Plaintiff engaged in protected activity by requesting a reasonable accommodation.

259. Plaintiff engaged in participation activity.

260. Defendants and Defendants' agents were aware of Plaintiff's protected activity.

261. Plaintiff has suffered adverse actions because of her protected activity.

262. There is a causal connection between Plaintiff's protected activity and the adverse employment actions suffered by Plaintiff.

263. Plaintiff administratively exhausted her remedies prior to filing this suit.

264. Defendant's actions were willful and malicious.

265. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

266. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants' actions.

## COUNT VII

## RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

267. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated.

268. Plaintiff applied for FMLA leave and availed herself of a protected right under the FMLA to care for a serious health condition.

269. Plaintiff had a qualifying FMLA condition.

270. Plaintiff engaged in protected activity under the FMLA.

271. Defendants are entities receiving Federal Financial Assistance.

272. In 2018 and 2019 the Defendants received significant federal financial aid under various federal health and aid programs.

273. In 2018 and 2019 the Defendants received significant federal financial aid under various federal programs.

274. Plaintiff was retaliated against under a program and/or activity receiving federal financial assistance.

275. Defendants have waived immunity with respect to the FMLA.

276. Defendants maintain a handbook policy that permits employees to take FMLA leave.

277. Defendants inform its employees that it is bound by the terms of the FMLA.

278. Defendants permit its employees to take "FMLA" leave thereby representing to the employee that Defendant will not interfere with such leave pursuant to the FMLA.

279. Defendants represented to employees that they would not be retaliated against in violation of the FMLA.

280. Plaintiff had a serious medical condition qualifying her for FMLA leave.

281. Plaintiff's FMLA leave and/or protected activity were causally connected to Defendant's decision to terminate Plaintiff.

282. Plaintiff's FMLA leave was causally connected to materially adverse employment suffered by Plaintiff.

283. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

284. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants' actions.

## COUNT VIII

## DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, AS AMENDED, 29 U.S.C 794(a)

285. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated.

286. Plaintiff is a qualified person with a disability.

287. Plaintiff was able to perform the essential functions of her position.

288. Defendant is an entity receiving Federal Financial Assistance.

289. In 2018 and 2019 the Defendants received significant federal financial aid under various federal aid programs.

290. Plaintiff was discriminated under a program and/or activity receiving federal financial assistance.

291. Plaintiff suffers from a Rehabilitation Act qualifying disability.

292. Plaintiff requested reasonable accommodations to accommodate Plaintiff's disability.

293. Defendants failed to accommodate Plaintiff's disabilities.

27

294. Defendants intentionally delayed engaging Plaintiff in the interactive process.

295. Defendants intentionally delayed responding to Plaintiff's reasonable accommodation requests.

296. Defendants unlawfully denied Plaintiff's reasonable accommodation requests.

297. Plaintiff suffered adverse actions because of her disability and the denial of Plaintiff's requested accommodations.

298. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

299. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants' actions.

**COUNT IX**

**RETALIATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, AS AMENDED**

300. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated and states.

301. In 2018 and 2019 the Defendants received significant federal financial aid under various federal aid programs.

302. Plaintiff was retaliated against under a program and/or activity receiving substantial federal financial aid.

303. Plaintiff was discriminated and retaliated against under a program and/or activity receiving federal financial assistance.

304. Plaintiff engaged in protected activity under the Rehabilitation Act.

305. Plaintiff notified Defendant that she was disabled, under the meaning of the Rehabilitation Act and requested leave that was protected under the Act.

306. Plaintiff also requested a reasonable accommodation under the Rehabilitation Act.

307. Plaintiff engaged in participation and opposition activity under the Rehabilitation Act.

308. Defendant took adverse actions against Plaintiff because of Plaintiff's protected activities.

309. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

310. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants' actions.

## COUNT X

## RETALIATION AND/OR INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT 29 U.S.C. § 2615

311. Plaintiff herby adopts and incorporates all aforesaid paragraphs as if fully reproduced herein.

312. At all relevant times, Defendants controlled the terms and conditions of Plaintiff's employment, including the authority to discipline or terminate her.

313. Defendants have waived immunity with respect to the FMLA.

314. Defendants maintain a handbook policy that permits employees to take FMLA leave.

315. Defendants inform its employees that it is bound by the terms of the FMLA.

316. Defendants permit its employees to take "FMLA" leave thereby representing to the employee that Defendant will not interfere with such leave pursuant to the FMLA.

317. At all relevant times herein, Defendants were an "employer" as defined by the Family and Medical Leave Act, 29 U.S.C. § 2611(4)(A).

318. At all relevant times, Plaintiff was an "employee" of Defendant as defined by the Family and Medical Leave Act, 29 U.S.C. § 2611(4)(A).

319. At all relevant times, Plaintiff had a right under the FMLA, 29 U.S.C. § 2612(a)(1), to twelve workweeks of leave during the twelve month period for family and health-related matters.

320. Upon an exercise of her rights under FMLA, 29 U.S.C. § 2612(a)(1), Plaintiff also had a right under § 2614(a)(1)(A)-(B), 29 C.F.R. §§ 825.106, 825.214, and 825.215(a) to be restored by Defendant to an equivalent position with equivalent terms and conditions of employment.

321. During the course of her employment with Defendants, Plaintiff exercised her right under the FMLA, 29 U.S.C. § 2612(a)(1).

322. At all times relevant, Defendants had a duty under the FMLA, 29 U.S.C. § 2615 not to interfere with Plaintiff's right under the FMLA.

323. Defendants interfered with Plaintiff's rights under the FMLA and retaliated against her for exercising her rights because Defendants retaliated against Plaintiff when she returned from protected leave.

324. Defendants took adverse actions against Plaintiff.

325. Defendants engaged in a hostile work environment against Plaintiff.

326. Defendants changed the terms and conditions of Plaintiff's position.

327. Plaintiff was not permitted to return to her same position.

328. Defendants interfered with Plaintiff's rights under FMLA and retaliated against her because Defendants failed to restore Plaintiff to the equivalent position upon her return from leave.

329. Defendant retaliated against Plaintiff because Defendants reprimanded Plaintiff for alleged poor performance while she was on approved FMLA leave.

330. Plaintiff did not have poor performance.

331. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

332. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants' actions.

<h3 style="text-align:center"><u>COUNT XI</u></h3>

<h3 style="text-align:center"><u>RETALIATION IN VIOLATION OF 42 U.S.C. §2000e.</u></h3>

333. Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated herein.

334. Defendant retaliated against Plaintiff based on her protected complaints about unlawful sex and religious discrimination in violation of 42 U.S.C. §2000e, *et seq.*,

335. Plaintiff engaged in protected activity by opposing discriminatory and retaliatory employment practices to Defendant's employees, Plaintiff's supervisors and Defendants HR Department and other employees. Plaintiff held the reasonable, good-faith belief that Plaintiff was complaining about unlawful employment practices under Title VII.

336. Plaintiff engaged in protected activity by engaging in participation activity.

337. Plaintiff filed complaints and with the MCCR, the EEOC and other state administrative agencies responsible for administrating Title VII.

338. At the time, Plaintiff maintained a reasonable belief that she was opposing unlawful employment practices under 42 U.S.C. §2000e, *et seq.*

339. When Plaintiff voiced the aforementioned opposition (and engage in participation activity) Defendant, Plaintiff had the reasonable belief that she was opposing unlawful discriminatory employment practices.

340. Defendant and Defendant's agents were aware of Plaintiff's protected activity.

341. Plaintiff has suffered adverse actions because of her protected activity.

342. Defendant took the aforementioned adverse actions against Plaintiff because of her protected activity.

343. Defendant's adverse actions against Plaintiff were motivated, in whole or in part, by Plaintiff' protected activity.

344. Plaintiff suffered a continuing retaliatory hostile work environment because of Plaintiff's protected activity.

345. The continuing hostile work environment was motivated in whole -or in part - because of Plaintiff's protected activity.

346. The continuing hostile work environment was severe and pervasive.

347. Plaintiff suffered adverse actions and was denied employment opportunities, Plaintiff was disciplined, Plaintiff was threatened with demotions and termination, Plaintiff was subject to intimidation and ridicule during Defendant's "investigations," and Plaintiff had her duties and job functions reassigned, Plaintiff was removed from her position and Plaintiff suffered a retaliatory hostile work environment.

348. There is a causal connection between Plaintiff's protected activity and adverse employment actions suffered by Plaintiff.

349. As described more fully above, Defendant engaged in unlawful employment practices by retaliating against Plaintiff for opposing discriminatory employment practices in violation of 42 U.S.C. §2000e, *et seq.*

350. Plaintiff administratively exhausted her remedies prior to filing this suit.

351. Defendants' actions were willful and malicious.

352. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

353. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants actions.

## COUNT XII

### RETALIATION IN VIOLATION OF MARYLAND CODE, STATE GOVERNMENT ARTICLE, SECTION 20-606, et seq.

354. Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated herein.

355. Defendant retaliated against Plaintiff based on her protected complaints about unlawful sex, religious discrimination, sexual orientation discrimination and retaliation in violation of Maryland Code, State Government Article, Section 20-606, et seq..,

356. Plaintiff engaged in protected activity by opposing discriminatory and retaliatory employment practices to Defendant's employees, Plaintiff's supervisors and Defendants HR Department and other employees. Plaintiff held the reasonable, good-faith belief that Plaintiff was complaining about unlawful employment practices under Maryland Code, State Government Article, Section 20-606, et seq.

357. Plaintiff engaged in protected activity by engaging in participation activity.

358. Plaintiff filed complaints with the MCCR, the EEOC and other state administrative agencies responsible for administrating Maryland Code, State Government Article, Section 20-606, et seq.

359. At the time, Plaintiff maintained a reasonable belief that she was opposing unlawful employment practices under Maryland Code, State Government Article, Section 20-606, et seq.

33

360. When Plaintiff voiced the aforementioned opposition (and engage in participation activity) to Defendants, Plaintiff had the reasonable belief that she was opposing unlawful discriminatory employment practices.

361. Defendants and Defendants' agents were aware of Plaintiff's protected activity.

362. Plaintiff has suffered adverse actions because of her protected activity.

363. Defendant took the aforementioned adverse actions against Plaintiff because of her protected activity.

364. Defendant's adverse actions against Plaintiff were motivated, in whole or in part, by Plaintiff' protected activity.

365. Plaintiff suffered a continuing retaliatory hostile work environment because of Plaintiff's protected activity.

366. The continuing hostile work environment was motivated in whole -or in part - because of Plaintiff's protected activity.

367. The continuining hostile work environment was severe and pervasive.

368. Plaintiff suffered adverse actions and was denied employment opportunities, Plaintiff was disciplined, Plaintiff was threatened with demotions and termination, Plaintiff was subject to intimidation and ridicule during Defendant's "investigations," and Plaintiff had her duties and job functions reassigned, Plaintiff was removed from her position and Plaintiff suffered a retaliatory hostile work environment.

369. There is a causal connection between Plaintiff's protected activity and adverse employment actions suffered by Plaintiff.

370. As described more fully above, Defendant engaged in unlawful employment practices by retaliating against Plaintiff for opposing discriminatory employment practices in violation of Maryland Code, State Government Article, Section 20-606, *et seq.*

371. Plaintiff administratively exhausted her remedies prior to filing this suit.

372. Defendant's' actions were willful and malicious.

373. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

374. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

As to all counts: attorneys' fees, costs, prejudgment interest, post-judgment interest, backwages, front-wages, front-benefits, compensatory damages, punitive damages and injunctive relief. Moreover, Plaintiff requests damages be awarded

    a. In the first cause of action, judgment against Defendants in the amount of $1,000,000.

    b. In the second cause of action, judgment against Defendants in the amount of $1,000,000.

    c. In the third cause of action, judgment against Defendants in the amount of $1,000,000.

    d. In the fourth cause of action, judgment against Defendants in the amount of $1,000,000

    e. In the fifth cause of action, judgment against Defendants in the amount of $1,000,000

    f. In the sixth cause of action, judgment against Defendants in the amount of $1,000,000

    g. In the seventh cause of action, judgment against Defendants in the amount of $1,000,000

    h. In the eighth cause of action, judgment against Defendants in the amount of $1,000,000

    i. In the ninth cause of action, judgment against Defendants in the amount of $1,000,000

j.   In the tenth cause of action, judgment against Defendants in the amount of $1,000,000.

k.   In the eleventh cause of action, judgment against Defendants in the amount of $1,000,000

l.   In the twelfth cause of action, judgment against Defendants in the amount of $1,000,000

m.   An order directing Defendant to pay reasonable attorney's fees and costs of this litigation.

n.   Such other and further relief as the Court may deem just.

Respectfully Submitted,

Morris E. Fischer, Esq.
Morris E. Fischer, LLC
MD Bar No. 26286
8720 Georgia Ave. Suite 210
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
morris@mfischerlaw.com
Attorney for Plaintiff

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all matters properly tried to a jury.

Respectfully Submitted,

Morris E. Fischer, Esq.
Morris E. Fischer, LLC
MD Bar No. 26286
8720 Georgia Ave. Suite 210
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
morris@mfischerlaw.com
Attorney for Plaintiff